IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. |
| | : | |
| REV. ALBERT M. LIBERATORE, | : | |
| JR., DIOCESE OF SCRANTON, | : | |
| SACRED HEART OF JESUS CHURCH, | : | |
| BISHOP JAMES C. TIMLIN, | : | |
| REV. JOSEPH R. KOPACZ and | : | |
| BROTHER ANTONIO F. ANTONUCCI, | : | |
| | : | |
| Defendants. | : | |

---

## COMPLAINT

---

Plaintiff John Doe, by and through his undersigned counsel, states the following as his Complaint against Defendants Rev. Albert M. Liberatore, Jr., Diocese of Scranton, Sacred Heart of Jesus Church, Bishop James C. Timlin, Rev. Joseph R. Kopacz and Brother Antonio F. Antonucci in the above-captioned matter:

### PARTIES

1.   Plaintiff John Doe ("Doe") is now an adult man and resident of the Commonwealth of Pennsylvania.  Doe was born in 1984 and was a minor throughout the several year odyssey of sexual abuse and psychological and emotional devastation that is

the subject of this Complaint.  For this reason, he is identified only as "Doe" in public filings.  His identity and his date of birth are revealed in the sealed and otherwise identical copy of the Complaint filed herewith.

2.    Defendant Rev. Albert M. Liberatore, Jr. ("Father Liberatore") is an adult individual residing at 906 West Locust Street, Scranton, Pennsylvania.  Father Liberatore was ordained a Roman Catholic priest in the Diocese of Scranton in August 1989. During the years that Father Liberatore sexually abused and emotionally devastated Doe, Father Liberatore was an agent, servant and/or employee of the Diocese of Scranton.

3.    Defendant Diocese of Scranton is a unit of the Catholic Church encompassing the eleven counties in Northeastern Pennsylvania with a principal place of business at 300 Wyoming Avenue, Scranton, Pennsylvania.  The Diocese of Scranton manages and operates Catholic parishes, schools and programs in Northeastern Pennsylvania, including the Sacred Heart of Jesus Church in Duryea, Pennsylvania, and is responsible for supervising the staff of those institutions.

4.    Defendant Sacred Heart of Jesus Church is a Catholic church within the Diocese of Scranton with a principal place of business at 529 Stephenson Street, Duryea, Pennsylvania. During the period from July 1997 through July 2003, Father

2

Liberatore was an agent, servant and/or employee of the Sacred Heart of Jesus Church.  The Diocese of Scranton was, during the years that Father Liberatore sexually abused and emotionally devastated Doe, responsible for the management and control of the Sacred Heart of Jesus Church and for employing, managing and supervising the church staff, including Father Liberatore.

5.    Defendant Bishop James C. Timlin ("Bishop Timlin") is an adult individual residing at the Villa St. Joseph in Dunmore, Pennsylvania.  Bishop Timlin was ordained a Roman Catholic priest in Rome in 1951 and served as bishop of the Diocese of Scranton from April 4, 1984 until his retirement on July 28, 2003.  During the years that Father Liberatore sexually abused and emotionally devastated Doe, Bishop Timlin was responsible for the management and supervision of the agents, servants and employees of the Diocese of Scranton, including Father Liberatore, and for ensuring the well-being of parishoners, guests, visitors and others who utilized the facilities and services offered by the Diocese of Scranton.

6.    Defendant Rev. Joseph R. Kopacz ("Father Kopacz") is an adult individual residing at 1217 Prospect Avenue, Scranton, Pennsylvania.  Father Kopacz is an ordained Roman Catholic priest.  During the years that Father Liberatore sexually abused and emotionally devastated Doe, Father Kopacz was

the Vicar for Priests for the Diocese of Scranton with
responsibility for supervising the priests of the diocese,
including Father Liberatore, and for receiving and handling
complaints of suspected abuse by members of the clergy.

7.    Defendant Brother Antonio F. Antonucci ("Brother
Antonio") is an adult individual residing at 717 Pittston Avenue,
Scranton, Pennsylvania.  Brother Antonio describes himself as a
hermit Benedictine monk associated with the Catholic Church.  In
or about the fall of 2000, Brother Antonio was hired by Father
Liberatore as an employee of the Sacred Heart of Jesus Church.
Brother Antonio was assigned by Father Liberatore to perform
various tasks, including teaching catechism classes to children
in the parish.  He was an agent, servant and/or employee of the
Sacred Heart of Jesus Church and Diocese of Scranton at the time
of his acts alleged herein.

## JURISDICTION AND VENUE

8.    This action is brought under 18 U.S.C. § 2255(a)
which provides a vehicle for victims of sexual abuse to sue in
federal court for damages sustained as a result of the abuse.
Pursuant to 28 U.S.C. § 1331, this Court has subject matter
jurisdiction over the claim for damages under 18 U.S.C. §
2255(a).  This Court has supplemental jurisdiction over the
related state law claims pursuant to 28 U.S.C. § 1367(a).

4

9.   Venue lies properly in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) in that the sexual abuse and employment practices that are the subject of this Complaint took place in this district, Defendants Father Liberatore, Bishop Timlin, Father Kopacz and Brother Antonio reside in this district and Defendants Diocese of Scranton and Sacred Heart of Jesus Church maintain principal places of business in this district.

## FACTUAL BACKGROUND

10.   Doe was a member and parishoner of the Sacred Heart of Jesus Church.  He was raised in a devout Roman Catholic family, was baptized and confirmed, attended weekly mass, volunteered as an altar server and participated in various church-related activities.  Doe and his family had great devotion, reverence and respect for the Roman Catholic Church and its representatives.

11.   Following an assignment at St. Pius X Seminary, Father Liberatore was assigned by Bishop Timlin to the Sacred Heart of Jesus Church as its administrator in July 1997.  He was later named pastor by Bishop Timlin in July 1998 and remained employed in this capacity until July 2003 when he became a full-time member of the Diocesan faculty at the University of Scranton.

5

12.  On information and belief, Bishop Timlin and other officials of the Diocese of Scranton received complaints of inappropriate sexual conduct involving Father Liberatore before Bishop Timlin transferred Father Liberatore to the Sacred Heart of Jesus Church in July 1997.

13.  While he was stationed at Sacred Heart of Jesus Church, Father Liberatore developed a close relationship with Doe and his mother.

14.  In 1999, Father Liberatore, as the pastor, hired Doe when he was only fourteen years old to work at the Sacred Heart of Jesus Church as a sacristan.  Doe's father had recently been diagnosed with a serious chronic debilitating illness. Father Liberatore convinced Doe's mother that working at the church would be beneficial for Doe as he struggled with his father's serious illness.

15.  Father Liberatore had the power to make and change Doe's employment responsibilities, including the hours that he was required to be present at the rectory and church.

16.  After Father Liberatore established the employment relationship with Doe, he embarked on further efforts to gain overmastering control over Doe.  Among other things, he entertained Doe at expensive restaurants and purchased

extravagant gifts for Doe, including, but not limited to, a watch, a paint ball gun, a cellular telephone, a palm pilot, a laptop computer, clothing and vacations.  Father Liberatore routinely used large sums of cash to purchase gifts for Doe and to pay for meals and drinks at the expensive restaurants where he entertained Doe.

17.  In furtherance of his manipulation and his efforts to develop the trust of Doe and his family, Father Liberatore in 1999 assured Doe's parents in writing that he loved Doe "like a son."  Father Liberatore wrote, in part:



Contrary to Father Liberatore's reassuring and manipulative words of paternal love and support, and aided and abetted by his status as a Roman Catholic priest, Father Liberatore engaged in a prolonged pattern of sexual abuse and exploitation of the "kid" who was "like a son" to him and whom he vowed to protect.  Father Liberatore's conduct was both intentional and reckless.

18.   While studying abroad in 2000, Father Liberatore remained in contact with Doe by mailing him gifts and letters. In one such communication which accompanied an article of clothing purchased as a gift for Doe, Father Liberatore memorialized his obsessive feelings for Doe in writing.  He stated, in part:

> Think of me when you wear it, and know that, at the very same moment, it's a good bet that I'm probably thinking about you!
>
> I love you lots!
> — Jr W

19.   In one of his private letters to Doe, Father Liberatore memorialized his unnatural and desirous attraction for Doe by writing, in part:

> If these five pages of words and words and words leave ANYTHING ringing in your ears, let it be this: you ARE SO SPECIAL. There are billions of people in this world God created — but you are my favorite one!
>
> I love you.
> Jr W

20.   Preying on Doe's vulnerabilities and the religious devotion of Doe and his family, Father Liberatore used his authority, influence and persuasion as a Roman Catholic priest to gain Doe's trust and the trust of his family and then abused that trust by sexually exploiting and assaulting Doe.  The sexual abuse began in approximately 1999, when Doe was 14 years old, and continued through 2002, when Doe was 17 years old.

21.   During this period while Doe was a minor, Father Liberatore repeatedly plied Doe with alcohol, exposed him to sexually explicit material and conversation and sexually abused Doe.

22.   Father Liberatore had a satellite dish at the rectory which permitted him to obtain and view pornographic programs without fear of detection.  After providing Doe with alcohol, he directed Doe to watch these sexually explicit programs with him at the rectory.

23.   Under false pretenses related to Doe's employment responsibilities at the church, Father Liberatore, who under the supervision of the Diocese of Scranton controlled the terms of Doe's employment, convinced Doe and his mother that it would be easier for Doe to prepare the church for early morning mass if he spent the night at the rectory.  Based upon Father Liberatore's professed concern for Doe's well being and his status as a

trusted Catholic priest, Doe's mother allowed Doe to sleep at the rectory in order to assist with early morning masses.

24.   During the overnight stays at the rectory, Father Liberatore directed Doe to sleep with him in his bed even though there were other empty beds at the rectory.  Father Liberatore specifically threatened Doe not to tell his mother or anyone else about the sleeping arrangements.  He further exerted profound spiritual and emotional control over Doe by invoking bizarre threats and references to Satan and the devil.

25.   Father Liberatore arranged for Brother Antonio, who claimed to be a Benedictine monk, to assist with pastoral responsibilities at the Sacred Heart of Jesus Church.  It was known to Bishop Timlin, Father Kopacz and others at the Diocese of Scranton that Brother Antonio was assisting Father Liberatore. Bishop Timlin and Father Kopacz authorized Brother Antonio to associate with the Sacred Heart of Jesus parish under Father Liberatore's direction without any meaningful investigation and notwithstanding earlier allegations of sexual abuse made against Brother Antonio.

26.   In the summer of 2000, Father Liberatore invited Doe to travel with him to Europe.  Father Liberatore recommended the trip as a means of distracting Doe from his father's illness and other pressures at home.  While they were traveling in

10

Europe, Father Liberatore sexually abused Doe.

27.   During the fall of 2000, members of the Diocese of Scranton clergy became aware of and concerned about Father Liberatore's inappropriate conduct involving Doe.  The inappropriate conduct was reported to Father Kopacz, the Diocese of Scranton official with responsibility for receiving and addressing complaints of abuse by members of the clergy.  On information and belief, the complaints communicated to Father Kopacz included specific details about Doe spending the night at the rectory.  Neither Bishop Timlin nor Father Kopacz nor any other officials of the Diocese of Scranton informed Doe's parents that complaints had been made concerning Father Liberatore's behavior involving their son.

28.   When Father Liberatore learned that complaints had been made to Father Kopacz and the Diocese of Scranton concerning his conduct, he attacked and threatened the priests who had knowledge of the complaints and accused those priests of misconduct.  Father Liberatore had a history and practice of attacking his accusers in an effort to deflect attention from himself and avoid responsibility for his own actions.

29.   When confronted by Doe's mother, Father Liberatore denied any wrongdoing.  Father Liberatore explained to Doe's mother that other members of the clergy were jealous of him and

11

claimed that "the devil was at work" in those priests.

30.   Bishop Timlin failed to conduct any meaningful investigation into the allegations involving Father Liberatore's behavior toward Doe.  Further, on information and belief, Bishop Timlin violated the alleged policy of the Diocese of Scranton when he and other diocesan officials failed to bring the complaints regarding Father Liberatore to the review board established by the Diocese of Scranton to investigate and address complaints of sexual abuse.  Rather, Bishop Timlin directed Father Liberatore and the complaining priests to "put the issues behind them."  Bishop Timlin's willful blindness to the inappropriate conduct of Father Liberatore allowed Father Liberatore to continue his abusive and manipulative conduct with Doe without fear of punishment from the Diocese of Scranton.

31.   Knowing that Bishop Timlin did nothing to condemn his conduct or prevent further abuse of Doe even in the face of complaints, Father Liberatore continued to sexually assault and exploit Doe.

32.   Doe, an adolescent, was powerless in the face of Father Liberatore's overmastering influence based on his status as a Roman Catholic priest, his standing in the community and his spiritual and emotional manipulation and threats.

33.   During the period from approximately 2000 through 2002, Father Liberatore had Doe sleep with him in his bed at the Sacred Heart of Jesus Church rectory sometimes as often as two nights per week.  On one occasion, Doe awoke in the middle of the night to find Father Liberatore's hand on his genital area.  On other occasions, Doe awoke to find Father Liberatore lying on top of him or masturbating while lying in bed next to him.

34.   Father Liberatore openly hosted parties for gay men at the Sacred Heart of Jesus Church rectory.  On one occasion, one of the party guests looked at Doe and commented "dessert just arrived."  On the same occasion, Doe witnessed two men engaged in sexual activity on the second floor of the rectory.  When Doe reported the conduct to Father Liberatore, Father Liberatore told him to forget what he had witnessed.

35.   Doe later discovered sexually explicit material on Father Liberatore's computer in the rectory at the Sacred Heart of Jesus Church.  When he reported the discovery to Father Liberatore, Father Liberatore screamed at Doe, inexplicably blamed Doe for Father Liberatore's bizarre behavior and suggested to Doe that something was wrong with Doe.

36.   Father Liberatore strongly discouraged Doe from having romantic relationships with females.  When Doe began to date a girl whom he met at a high school function, Father

13

Liberatore encouraged Doe to break off the relationship and told Doe that Doe was gay and that it was okay to be gay.

37.   In May 2002, while he was teaching at the University of Scranton, Father Liberatore arranged for Doe, who was then 17 years old, to utilize an empty office on campus to study for his high school exams.  While Doe was visiting the campus for this purpose, Father Liberatore sexually assaulted Doe in a room at St. Thomas Hall at the University of Scranton.

38.   Shortly after the assault at the University of Scranton, and without disclosing his assaults on Doe or his ephebophilic tendencies, Father Liberatore sought the permission of Doe's mother for Doe to travel with him to New York City.

39.   While in New York City, Father Liberatore arranged for Doe to obtain a fake identification card which misrepresented that Doe was born on November 17, 1979 and was a resident of the State of Vermont.  Father Liberatore paid for the fake identification card which offered him a measure of protection if he was confronted by anyone regarding his inappropriate conduct toward Doe.  The fake identification falsely indicated that Doe was 23 years old.  In fact, Doe was 17 and still a minor under the law of Pennsylvania and New York.

14

40.  That night, nearly two years after the Diocese of Scranton and Bishop Timlin received and declined to investigate the complaints concerning Father Liberatore's inappropriate behavior with Doe, Father Liberatore sexually assaulted Doe in a hotel room in the Washington Square section of Manhattan.  Father Liberatore was charged with three felonies by the District Attorney of Manhattan for this illegal conduct.  Father Liberatore is awaiting trial on these and other criminal charges.

41.  Following the trip to New York, Doe reported Father Liberatore's sexual abuse to Brother Antonio.  Brother Antonio, under the auspices of the Diocese of Scranton, strongly counseled Doe not to report the abuse, but rather to forgive Father Liberatore.  He warned Doe that it would ruin Father Liberatore's life if Doe reported the abuse.  Brother Antonio assured Doe that Father Liberatore would seek counseling and that the abuse would never happen again.

42.  Doe also informed his mother of the sexual assault that had occurred in New York.  Father Liberatore and Brother Antonio used every conceivable spiritual ploy available to them to implore Doe and his mother to forgive Father Liberatore and to keep the abuse a secret.  Father Liberatore's spiritual and

15

emotional manipulation was without boundary.  In writing, Father Liberatore advised Doe's mother, in part:

*Please know*

529 STEPHENSON STREET • DURYEA, PENNSYLVANIA 18642 PHONE: (717) 457-2253 • FAX: (717) 451-2633

*that each time I extend my hands in our new Reconciliation Chapel to offer healing and peace, I will do so with new insight and dedication, having come to appreciate just how priceless this kind of healing is.*

43.  Both Father Liberatore and Brother Antonio encouraged Doe and his mother to lie and extracted promises of secrecy from them.  Father Liberatore and Brother Antonio even threatened Doe and his mother that any public disclosure of the sexual abuse would ruin Doe's life.

44.  On information and belief, both prior to and during the period of Father Liberatore's abuse of Doe, Bishop Timlin, Father Kopacz and other officials of the Diocese of Scranton and Sacred Heart of Jesus Church knew that Father Liberatore was a sexual predator and thus posed a risk of harm to Doe.  Despite their knowledge of Father Liberatore's ephebophilic tendencies and his inclination toward sexual abuse, the Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin and Father Kopacz failed to take appropriate action to protect Doe

16

and instead permitted Father Liberatore to spend time alone with Doe.

45.   Notwithstanding the epidemic of sexual abuse of minors that had previously attracted national attention and cries for reform, the Diocese of Scranton employed insufficient screening procedures to weed out unfit employees, failed to take adequate steps to train its employees to recognize and prevent abuse of minors, failed to respond timely and adequately to complaints of abuse, made unwarranted assumptions in favor of diocesan priests, failed to report suspected instances of abuse to civil authorities and, above all, fostered a culture of denial, laxity, secrecy and avoidance of scandal at all costs.

46.   Despite ample warnings regarding Father Liberatore's conduct, Bishop Timlin failed to respond to the problem forthrightly and firmly.  Rather, the response of the Diocese of Scranton, under Bishop Timlin's supervision, was characterized by callous indifference, moral laxity, excessive leniency, insensitivity, secrecy and neglect.

47.   At the time of the sexual abuse described above, Doe was under the influence of Father Liberatore as a Roman Catholic priest, counselor and spiritual advisor.  This authority was granted to him by the Diocese of Scranton, Sacred Heart of Jesus Church and Bishop Timlin.

17

**COUNT I**

**CHILD ABUSE VICTIMS' RIGHTS ACT, 18 U.S.C. § 2255(a)**

**Doe v. Father Liberatore, Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin and Father Kopacz**

48. Paragraphs 1 through 47 of this Complaint are incorporated by reference as if set forth fully herein.

49. As set forth more fully above, while he was a minor, Doe suffered personal injury as a result of sexual abuse perpetrated by Father Liberatore in violation of state and federal law.  The abuse includes, but is not limited to, the following:

(a) Father Liberatore, while a priest under the control of the Diocese of Scranton, transported Doe in interstate commerce to the State of New York with intent to engage in sexual activity for which he can be and was in fact charged with a criminal offense in violation of the laws of the State of New York, including Penal Law § 130.50(2) (sodomy in the first degree) and Penal Law § 130.65(2) (sexual abuse in the first degree), and the laws of the Commonwealth of Pennsylvania, including 18 Pa. C.S.A. § 3126(a)(1) (indecent assault), 18 Pa. C.S.A. § 6301(a)(1) (corruption of minors) and 18 Pa. C.S.A. § 4304(a) (endangering the welfare of children).  Such conduct is in violation of 18 U.S.C. § 2421 and 18 U.S.C. § 2423(a);

(b) Father Liberatore, while a priest under the control of the Diocese of Scranton, knowingly induced Doe to travel in interstate commerce and/or foreign commerce, specifically to the State of New York and Europe, to engage in sexual activity for which he can be and was in fact charged with a criminal offense in violation of the laws of the State of New York, including Penal Law § 130.50(2) (sodomy in the first degree) and Penal Law § 130.65(2) (sexual abuse in the first degree), and the laws of the Commonwealth of Pennsylvania, including 18 Pa. C.S.A. § 3126(a)(1) (indecent assault), 18 Pa. C.S.A. § 6301(a)(1) (corruption of minors) and 18 Pa. C.S.A. § 4304(a) (endangering the welfare of children). Such conduct is in violation of 18 U.S.C. § 2422(a);

(c) Father Liberatore, while a priest under the control of the Diocese of Scranton, used the mail and other means of interstate or foreign commerce to coerce Doe to engage in sexual activity for which Father Liberatore can be and was in fact charged with a criminal offense, including violations of the laws of the State of New York, including Penal Law § 130.50(2) (sodomy in the first degree) and Penal Law § 130.65(2) (sexual abuse in the first degree), and the laws of the Commonwealth of Pennsylvania, including 18 Pa. C.S.A. § 3126(a)(1) (indecent assault), 18 Pa. C.S.A. § 6301(a)(1) (corruption of minors) and 18 Pa. C.S.A. § 4304(a) (endangering the welfare of children).

19

Such conduct is in violation of 18 U.S.C. § 2422(b); and

      (d)   Father Liberatore, while a priest under the control of the Diocese of Scranton, traveled in interstate and foreign commerce, specifically to the State of New York and Europe, for the purpose of engaging in illicit sexual conduct with Doe in violation of 18 U.S.C. § 2423 (b) and (c).

      50.   Doe is a victim of violations of 18 U.S.C. §§ 2421, 2422(a), 2422(b), 2423(a), 2423(b) and 2423(c) and suffered personal injury as a result and is therefore entitled to recovery of damages under 18 U.S.C. § 2255(a).

      51.   Father Liberatore used the power, authority and trust associated with his position as a Catholic priest of the Diocese of Scranton and Sacred Heart of Jesus Church to commit the criminal sexual abuse described above.  Furthermore, on information and belief, the Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin and Father Kopacz had prior notice of Father Liberatore's propensity for ephebophilic behavior and nonetheless continued to provide him with unsupervised access to minors, including Doe, thereby affording Father Liberatore the opportunity to commit the sexual abuse that is the subject of this Complaint.  The Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin and Father Kopacz are, therefore, vicariously liable for the acts of Father Liberatore described

herein and complicit in his felonious misconduct pursuant to 18 U.S.C. § 4.

WHEREFORE, Doe demands the entry of judgment in his favor against Father Liberatore, the Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin and Father Kopacz, together with an award of compensatory and punitive damages, reimbursement of his attorneys' fees and such other and further relief as this Court deems appropriate under the circumstances.

### COUNT II
### ASSAULT AND BATTERY
### Doe v. Father Liberatore

52.   Paragraphs 1 through 51 of this Complaint are incorporated by reference as if set forth fully herein.

53.   As set forth more fully above, acting in his capacity as a priest and with the intent to cause harmful and offensive contact, and under the control of the Diocese of Scranton, Father Liberatore sexually abused and assaulted Doe on numerous occasions and in various locations, including in his rectory bedroom at the Sacred Heart of Jesus Church, in his office at the University of Scranton and while on trips to Europe and New York City.

54.   As a direct and proximate result of the assault and battery described above, Doe has suffered and continues to suffer physical and mental injuries and emotional pain and suffering.

55.   The acts of Father Liberatore as alleged above were done willfully, maliciously and with wanton disregard for the safety and well-being of Doe.  As a result, Doe is entitled to an award of punitive damages.

WHEREFORE, Doe demands the entry of judgment in his favor against Father Liberatore together with an award of compensatory and punitive damages and such other and further relief as this Court deems appropriate under the circumstances.

### COUNT III

### VICARIOUS LIABILITY

### Doe v. Diocese of Scranton, Sacred Heart of Jesus Church and Bishop Timlin

56.   Paragraphs 1 through 55 of this Complaint are incorporated by reference as if set forth fully herein.

57.   The Diocese of Scranton, Sacred Heart of Jesus Church and Bishop Timlin held Father Liberatore out as a trusted priest of the Diocese of Scranton, a competent spiritual advisor and a devout minister of Christ.  At all times relevant hereto, Father Liberatore was acting as an agent of the Diocese of

Scranton and Sacred Heart of Jesus Church, was doing the kinds of acts he was engaged to perform, and was motivated, at least in part, by a desire to further the mission of the Catholic Church and the Diocese of Scranton.

58.   In the course of carrying out his assigned duties as priest and pastor, Father Liberatore sought and gained the trust and confidence of Doe and his family as a friend, spiritual guide, confessor and representative of the Catholic Church.   In his capacity as priest and spiritual authority figure, he also sought and gained parental consent for Doe to spend a considerable amount of time alone with him and to travel with him to the State of New York and foreign countries.

59.   Father Liberatore also sought and gained Doe's trust, friendship, admiration and obedience.   He encouraged Doe to look to him as an authority on religious, moral and ethical matters.

60.   Using the power, authority and trust conferred upon him by virtue of his position as priest and pastor, Father Liberatore sexually exploited and abused Doe.   The molestation occurred while Father Liberatore was acting within the scope of his employment and/or within the scope of his agency relationship with the Diocese of Scranton, Sacred Heart of Jesus Church and Bishop Timlin and/or this conduct was committed with the apparent

authority of the Diocese of Scranton, Sacred Heart of Jesus Church and Bishop Timlin.

61.   In light of the prior notice of Father Liberatore's aberrant sexual behavior and the complete lack of supervision with respect to his relations with Doe, the sexual assaults perpetrated by Father Liberatore upon Doe were not unexpected by the Diocese of Scranton, Sacred Heart of Jesus Church or Bishop Timlin.

62.   The Diocese of Scranton, Sacred Heart of Jesus Church and Bishop Timlin are vicariously liable for the sexual abuse and molestation committed by their agent, Father Liberatore.

WHEREFORE, Doe demands the entry of judgment in his favor against the Diocese of Scranton, Sacred Heart of Jesus Church and Bishop Timlin together with an award of compensatory and punitive damages and such other and further relief as this Court deems appropriate under the circumstances.

## COUNT IV

## AIDING AND ABETTING

## Doe v. Brother Antonio

63.   Paragraphs 1 through 62 of this Complaint are incorporated by reference as if set forth fully herein.

64.   As stated above, Father Liberatore engaged in a prolonged pattern of sexual abuse and exploitation of Doe.

65.   Brother Antonio was aware of Father Liberatore's abuse of Doe.

66.   Brother Antonio substantially aided and assisted the abuse of Doe by, <u>inter alia</u>, encouraging Doe and his mother not to report the abuse, but rather to forgive Father Liberatore and keep the abuse a secret.

67.   Brother Antonio's conduct caused Doe to suffer physical and mental injuries and severe emotional distress.

68.   Brother Antonio acted willfully, maliciously and in wanton disregard for the rights and well-being of Doe.  As a result, Doe is entitled to an award of punitive damages.

WHEREFORE, Doe demands the entry of judgment in his favor against Brother Antonio, together with an award of compensatory and punitive damages and such other and further

relief as this Court deems appropriate under the circumstances.

## COUNT V

### NEGLIGENT HIRING, SUPERVISION AND RETENTION

### Doe v. Diocese of Scranton, Sacred Heart of Jesus Church and Bishop Timlin

69.   Paragraphs 1 through 68 of this Complaint are incorporated by reference as if set forth fully herein.

70.   At all times relevant to the abuse of Doe, Father Liberatore was on premises in the possession of the Diocese of Scranton and/or Sacred Heart of Jesus Church or other premises which he was privileged to enter only as a priest and/or spiritual and religious advisor to Doe.

71.   At all times relevant to the abuse of Doe, the Diocese of Scranton, Sacred Heart of Jesus Church and Bishop Timlin knew or should have known that Father Liberatore was a sexual predator with ephebophilic tendencies and was unfit to have unsupervised access to minors, especially teenage boys.

72.   The Diocese of Scranton, Sacred Heart of Jesus Church and Bishop Timlin had a duty to hire and retain competent, fit and otherwise qualified employees and to take appropriate precautions to prevent employees with known predilections for aberrant sexual behavior, including Father Liberatore, from abusing minors with whom they came in contact in connection with

26

their work.

73. The Diocese of Scranton, Sacred Heart of Jesus Church and Bishop Timlin breached their duty to use reasonable care in selecting, supervising and controlling Father Liberatore and their duty to prevent Father Liberatore from intentionally harming others and from conducting himself in such a way as to create an unreasonable risk of bodily harm to others. Among other things, the Diocese of Scranton, Sacred Heart of Jesus Church and Bishop Timlin:

(a) Employed inadequate screening procedures to assess the fitness and suitability of candidates for pastor and other diocesan positions;

(b) Responded to accusations of abuse, including complaints of inappropriate behavior by Father Liberatore directed at Doe, in a lax, lenient, secret and neglectful manner;

(c) Failed to refer complaints of sexual abuse, including complaints concerning Father Liberatore's inappropriate behavior toward Doe, to the diocesan review board specially created to advise the bishop in cases of suspected abuse;

(d) Failed to report allegations of sexual abuse, including the complaints concerning Father Liberatore's inappropriate behavior toward Doe, to civil authorities;

27

(e) Made unwarranted assumptions in favor of priests and other employees accused of sexual misconduct, including Father Liberatore;

(f) Emphasized secrecy and the avoidance of scandal at all costs and above all other considerations, including the safety and well-being of minor parishoners;

(g) Failed to adequately train its employees, representatives and staff to recognize and report instances of abuse; and

(h) Fostered a culture of secrecy that encouraged its employees and agents, including Brother Antonio, to shield members of the clergy and hinder the detection of wanton and immoral acts like those committed by Father Liberatore.

74. As a direct and proximate result of the breach of these duties, Doe has suffered and continues to suffer serious physical and mental injuries and emotional pain and suffering.

75. The acts of Defendants were done willfully, maliciously and in wanton disregard for the rights of Doe. As a result, Doe is entitled to an award of punitive damages.

WHEREFORE, Doe demands the entry of judgment in his favor against the Diocese of Scranton, Sacred Heart of Jesus Church and Bishop Timlin, together with an award of compensatory and punitive damages and such other and further relief as this Court deems appropriate under the circumstances.

## COUNT VI

### NEGLIGENCE PER SE

**Doe v. Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin, Father Kopacz and Brother Antonio**

76.    Paragraphs 1 through 75 of this Complaint are incorporated by reference as if set forth fully herein.

77.    Pennsylvania's Child Protective Services Law, 23 Pa. C.S.A. § 6301 et seq., provides in pertinent part:

> Persons who, in the course of their employment, . . . come into contact with children shall report or cause a report to be made in accordance with section 6313 (relating to reporting procedure) when they have reasonable cause to suspect, on the basis of their medical, professional or other training and experience, that a child coming before them in their professional or official capacity is an abused child.

23 Pa. C.S.A. § 6311(a).  The persons required to report under this section include members of the clergy.  23 Pa. C.S.A. § 6311(b).

78.   The Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin, Father Kopacz and Brother Antonio were obligated by this statute to report instances of suspected child abuse.

79.   On information and belief, Bishop Timlin, Father Kopacz and Brother Antonio and other officials of the Diocese of Scranton and the Sacred Heart of Jesus Church had reason to believe that Doe, with whom they came in contact in the course of their employment, was being sexually abused by Father Liberatore. They failed, however, to report such abuse as required by Pennsylvania's Child Protective Services Law.

80.   The failure to report the abuse was a proximate cause of the injuries suffered by Doe.

81.   The conduct of the Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin, Father Kopacz and Brother Antonio constitutes negligence _per_ _se_.

WHEREFORE, Doe demands the entry of judgment in his favor against the Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin and Father Kopacz, together with an award of compensatory and punitive damages and such other and further relief as this Court deems appropriate under the circumstances.

**COUNT VII**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**Doe v. Father Liberatore, Diocese of Scranton, Bishop Timlin, University of Scranton, Father Kopacz and Brother Antonio**

82.   Paragraphs 1 through 81 of this Complaint are incorporated by reference as if set forth fully herein.

83.   The intentional behavior and conduct of Father Liberatore described above is extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

84.   The Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin and Father Kopacz intentionally and/or recklessly permitted Father Liberatore to remain in active ministry and thereby provided him the opportunity to spend considerable amounts of time alone with Doe even though they knew or had reason to know that Father Liberatore was a sexual predator with ephebophilic tendencies.

85.   The conduct of the Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin and Bishop Kopacz in allowing a sexual predator to have unfettered and unsupervised access to Doe was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

31

86.   Incredibly, when he was made aware of Father Liberatore's sexual abuse of Doe, Brother Antonio counseled forgiveness rather than full disclosure and counseled secrecy and lying rather than transparency and openness.   This conduct was shameful, inexcusable and beyond the bounds of reasonable and acceptable conduct when confronted with allegations of sexual abuse involving a minor.

87.   As a direct and proximate result of the conduct described above, Doe has suffered and continues to suffer severe emotional distress.   Defendants knew, or in the exercise of reasonable care should have known, that the sexual assaults and abuse of Doe, and their failure to prevent that abuse, would cause Doe to suffer severe emotional distress.

88.   Defendants acted with willful, wanton, reckless, intentional and deliberate disregard for the likelihood that Doe would suffer severe emotional distress.   Doe is, therefore, entitled to an award of punitive damages.

WHEREFORE, Doe demands the entry of judgment in his favor against Father Liberatore, the Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin, Father Kopacz and Brother Antonio, together with an award of compensatory and punitive damages and such other and further relief as this Court deems appropriate under the circumstances.

**COUNT VIII**

**BREACH OF FIDUCIARY DUTY**

**Doe v. Father Liberatore, Diocese of Scranton
and Sacred Heart of Jesus Church**

89.   Paragraphs 1 through 88 of this Complaint are incorporated by reference as if set forth fully herein.

90.   The Diocese of Scranton held Father Liberatore out as a trusted Roman Catholic priest, counselor and spiritual advisor and thereby created and fostered a fiduciary relationship between Doe and Father Liberatore.  Doe placed trust and confidence in the Diocese of Scranton, Sacred Heart of Jesus Church and Bishop Timlin and Father Kopacz to whom Father Liberatore reported.  Doe also reposed trust and confidence in Brother Antonio who presented himself as a holy man of God and trusted representative of the Roman Catholic Church and who was appointed by Father Liberatore to assist him at Sacred Heart of Jesus Church.

91.   Father Liberatore breached his fiduciary duty to Doe by exploiting, manipulating and abusing Doe to satisfy his own desires.

92.   The Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin and Father Kopacz breached their fiduciary obligations to Doe by entrusting his spiritual guidance to Father

33

Liberatore who is a sexual predator.

93.   Brother Antonio breached his fiduciary duty to Doe by counseling him to forget and deny the abuse that was perpetrated on him by Father Liberatore.

94.   As a direct and proximate result of Defendants' breaches of their fiduciary obligations, Doe suffered physical and mental injuries and emotional pain and suffering.

95.   The acts of Defendants were done willfully, maliciously and in wanton disregard for the rights of Doe.  As a result, Doe is entitled to an award of punitive damages.

WHEREFORE, Doe demands the entry of judgment in his favor against Father Liberatore, the Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin, Father Kopacz and Brother Antonio, together with an award of compensatory and punitive damages and such other and further relief as this Court deems appropriate under the circumstances.

## JURY DEMAND

Plaintiff John Doe demands a jury trial on all issues so triable.

Respectfully submitted,

/s/Daniel T. Brier, Esquire
(PA I.D. 53248)
dbrier@mbklaw.com
Donna A. Walsh, Esquire
(PA I.D. 74833)
dwalsh@mbklaw.com

Attorneys for Plaintiff,
John Doe

MYERS, BRIER & KELLY, L.L.P.
Suite 200, 425 Spruce Street
Scranton, Pennsylvania  18503
(570) 342-6100

Date: November 5, 2004