# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, | |
| Plaintiff, | CIVIL ACTION NO. 3:04-CV-2427 |
| v. | (JUDGE CAPUTO) |
| REV. ALBERT M. LIBERATORE, et al., | |
| Defendants. | |

## MEMORANDUM

Before me is the issue of whether or not the minutes of the Scranton Diocesan Review Board and copies of investigative reports of a private detective who, at the request of the Bishop, investigated allegations of inappropriate behavior by certain Catholic priests in the Diocese of Scranton, are discoverable. I reviewed the documents *in camera*, and find they are not privileged and are discoverable.

The Plaintiff seeks to hold the Diocese of Scranton, the Sacred Heart of Jesus Church, Bishop James C. Timlin, Reverend Joseph R. Kopacz and Brother Antonio F. Antonucci responsible for the sexual abuse visited upon the Plaintiff, when a minor, by Reverend Albert M. Liberatore.[1]

The Diocese of Scranton Review Board is established pursuant to Article 2 of the Charter for the Protection of Children and Young People adopted by the United States Conference of Catholic Bishops. The board "will advise the . . . bishop in his assessment

---

[1] Mr. Liberatore has been found guilty, pursuant to a guilty plea, of crimes encompassing the sexual abuse of Plaintiff while a minor.

of allegations of sexual abuse of minors and in his determination of suitability for ministry." (Doc. 41, Ex. E, Art. 2, p. 3).

The Defendants argue that the documents should not be turned over to Plaintiffs on the grounds of (1) privilege and (2) the First Amendment to the United States Constitution. I will deal with each of those contentions.

**(1)    Privilege**

The Defendants urge the Court to fashion or craft a privilege which would protect against the disclosure of these documents. In *In re: Grand Jury Investigation*, 918 F.2d 374 (3d Cir. 1990), the Court of Appeals for the Third Circuit recognized Wigmore as stating the appropriate test to determine whether to recognize a privilege.[2]

The Wigmore test contains four factors: "(1) the communications must originate in a confidence that they will not be disclosed, (2) this element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties, (3) the relation must be one in which the opinion of the community ought to be sedulously fostered, (4) the injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation." *Id.* at 384 (emphasis by the Court).

Here, the communications (minutes and a recommendation) did not begin in confidence. Reports of sexual abuse were investigated with the purpose that remedial action would be taken. (Doc. 41, Ex. B.) Further, the Diocese recognizes the obligation to report

---

[2] The Court also recognized Judge Weinstein's factors in *U.S. v. King*, 73 F.R.D. 103, 105 (E.D.N.Y. 1976), but did not expound upon them. Moreover, they involved a criminal case where the need for information is greater, as is the risk of the loss of personal liberty. 918 F.2d at 384, fn 12.

sexual abuse of a minor to the civil authorities regardless of when it occurred. (Doc. 41, Ex. D.) In addition, the findings and recommendations of the Diocesan Review Board that the Bishop immediately remove Mr. Liberatore from "all ecclesiastical ministry, including his position as educator at the University of Scranton" have been placed in the public domain by release for publication to the local news media. (Doc. 41, Ex. C.) Therefore, prong (1) of the Wigmore test is not met.

It is difficult to find that confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties. The Board does not require confidentiality to properly evaluate evidence concerning sexual abuse of a minor and thereafter making a recommendation to the Bishop concerning the same. Indeed, the composition of the Board, viz, a priest, a former local government attorney, a county judge, an ethics professor, a counseling professor, and the executive director of a county department of Children and Youth Services, would, given their obligation to report sexual abuse of minors, suggest the contrary, viz, that confidentiality was not essential to the satisfactory maintenance of the relationship. The second prong of the Wigmore test has not been met.

Whether this relation should, in the opinion of the community, be diligently fostered is more difficult to assess. Certainly the community is interested in identifying child molestation and abusers, whatever their affiliation. Any institution that constructs an apparatus to assist in the identification of such people is desirable. To that extent, an organization such as the Board should be welcomed. On the other hand, confidentiality is not critical to the relationship in which the public would have an interest. There is nothing unique about this relationship such as there is for the priest and penitent or the attorney and client. There, confidentiality exists to promote disclosure. Here, confidentiality is

unnecessary.  The disclosure to the Bishop by way of recommendation is not greater than the need for the civil authorities to be aware of such behavior.  Therefore, I cannot say the third prong of the Wigmore test has been met.

Lastly, I cannot find that the injury to the relation between the Board and the Bishop by disclosure is greater than the benefit gained by the correct disposition of this litigation. The concealment of sexual abuse behavior toward minors cannot be justified by the need for confidentiality between the Board and the Bishop.  It simply turns civil society upside down.[3]  Therefore, the final Wigmore prong has not been met.

Therefore, I find that balancing the Wigmore factors would not yield a privilege in the instant case.

### (2)     First Amendment

The Defendants argue that to allow disclosure would intrude on the Bishop's ecclesiastical authority and interfere with the operation of the church, thereby crossing the bounds of the First Amendment.  Defendant relies on the proposition that the Board is consulting with the Bishop on the issue of fitness of a member of the clergy to continue or be removed from his ministry.  The Board is called upon to advise the Bishop "in his assessment of allegations of sexual abuse of minors and in his determination of suitability for the ministry." (Doc. 41, Ex. E, Art. 2, p. 3.)  Thus, the Board's job is to advise the Bishop regarding sexual abuse and whether the abuse rises to the level of fitness to continue in the ministry.  It is not a Board which determines whether a clergy member is generally fit by reason of education, experience, intellect and religious commitment for the ministry, but

---

[3] Indeed the United States Conference of Bishops recognized that "secrecy has created an atmosphere that . . . enabled sexually abusive behavior to be repeated." (Doc. 41, Ex. E.)

4

only whether he is fit or unfit by reason of allegations of the sexual abuse of minors. This one area of fitness for the ministry, viz involvement or non involvement in the sexual abuse of minors does not intrude on the Bishop's ecclesiastical authority, nor does it interfere with the operation of the church. Under no standard would disclosure constitute an interference with the operation of the church in contravention of the Establishment Clause of the First Amendment to the United States Constitution.

The investigative reports of the private investigator are not subject to any privilege and their disclosure in discovery does not contravene the Establishment Clause of the First Amendment to the United States Constitution.

## CONCLUSION

For the reasons noted, the documents will be made available to Plaintiff.

There are legitimate privacy concerns. For example, the identity of complainants and the identity of those with unsubstantiated charges are not appropriate for release to the public. It serves no useful purpose and could well be a disservice to those mentioned. Similarly, priests who have lost their ministry need no additional highlighting or notoriety. The matters discoverable should be the subject of a protective order for the foregoing reasons, and the Court will entertain a proposed, agreed upon order.

An appropriate Order follows.


Date: <u>February 14, 2006</u>              /s/ A. Richard Caputo
                                                                   A. Richard Caputo
                                                                   United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DOE,  Plaintiff,  v.  REV. ALBERT M. LIBERATORE, et al.,  Defendants. | CIVIL ACTION NO. 3:04-CV-2427  (JUDGE CAPUTO) |

**ORDER**

**NOW**, this 14th day of February, 2006, the Defendant, Diocese of Scranton, shall produce the documents requested in Plaintiff's First Request for Production of Documents 6, 8 and 12, upon the entry of a protective order.  The parties shall have ten (10) days from the date of this Order to agree upon an order.  Failing such, the parties will submit their respective proposed orders within fifteen (15) days of the date of this Order, and the Court will select one of them.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge