IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN DOE,                           :
                                    :
            Plaintiff,              :
                                    :
      v.                            :    NO.   04-CV-2427
                                    :
REV. ALBERT M. LIBERATORE,          :    JUDGE CAPUTO
JR., DIOCESE OF SCRANTON,           :
SACRED HEART OF JESUS CHURCH,       :    ELECTRONICALLY FILED
BISHOP JAMES C. TIMLIN,             :
REV. JOSEPH R. KOPACZ and           :
BROTHER ANTONIO F. ANTONUCCI,       :
                                    :
            Defendants.             :

_____

### PLAINTIFF'S TRIAL BRIEF
_____

Daniel T. Brier
Donna A. Walsh
MYERS, BRIER & KELLY, L.L.P.
Suite 200, 425 Spruce Street
Scranton, Pennsylvania  18503
(570) 342-6100

Attorneys for Plaintiff,
John Doe

## I.    Child Abuse Victims' Rights Act

The Child Abuse Victims Rights Act, 18 U.S.C. § 2255, provides a vehicle for minor victims of sexual abuse to sue in federal court for damages sustained as a result of the abuse.  The statute, as amended on July 27, 2006, provides in relevant part:

> Any person who, while a minor, was a victim of a violation of section 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee.  Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

18 U.S.C. § 2255(a).  Plaintiff John Doe ("Doe") is a victim of violations of 18 U.S.C. §§ 2421, 2422(a), 2422(b), 2423(a), 2423(b) and 2423(c) and suffered

2

personal injury as a result and is therefore entitled to recovery of damages under 18 U.S.C. § 2255(a). Defendant Rev. Albert M. Liberatore, Jr.'s guilty pleas constitute conclusive proof of the facts alleged in the criminal charges and therefore constitute conclusive proof of the crimes which form the basis for Doe's claim under the Child Abuse Victims' Rights Act.  <u>See Commonwealth, Dep't of Transp. v. Mitchell</u>, 517 Pa. 203, 210-12, 535 A.2d 581, 584-85 (1987) (conviction stemming from guilty plea is equivalent to conviction after jury trial and is admissible in civil case as conclusive proof of facts alleged in criminal charge).

## II. Assault and Battery

Pursuant to the Restatement (Second) of Torts § 21(1), a defendant may be held liable for assault if:

> (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension.

3

Nardella v. Dattilo, 36 Pa. D. & C.4th 364, 369 (Dauphin
County 1997) (quoting Restatement (Second) of Torts §
21(1)); see also Sides v. Cleland, 436 Pa. Super. 618,
626, 648 A.2d 793, 796 (1994), appeal denied, 540 Pa.
613, 656 A.2d 119 (1995).

In accordance with the Restatement (Second) of
Torts § 13, a defendant commits a battery if:

> (a) he acts intending to cause a
> harmful or offensive contact with the
> person of the other or a third person,
> or an imminent apprehension of such a
> contact, and (b) a harmful contact with
> the person of the other directly or
> indirectly results.

Nardella, 36 Pa. D. & C.4th at 370 (quoting Restatement
(Second) of Torts § 13)).  Unlike assault, the actor
must achieve a harmful or offensive contact with another
person to commit a battery.  Id.; see also Field v.
Philadelphia Elec. Co., 388 Pa. Super. 400, 416-17, 565
A.2d 1170, 1178 (1989).

Inappropriate sexual contact between a priest

4

and a parishioner may properly give rise to claims for
assault and battery.  <u>See</u> <u>Nardella</u>, 36 Pa. D. & C.4th at
370-71.

### III.  Negligent Supervision and Retention

Employers in Pennsylvania have a duty to
exercise reasonable care in selecting, supervising and
controlling employees.  <u>See</u>, <u>e.g.</u>, <u>Hutchison v. Luddy</u>,
560 Pa. 51, 742 A.2d 1052 (1999).  The basis for such a
claim is Section 317 of the Restatement (Second) of
Torts which provides:

> A master is under a duty to exercise
> reasonable care so to control his
> servant while acting outside the scope
> of his employment as to prevent him
> from intentionally harming others or
> from so conducting himself as to create
> an unreasonable risk of bodily harm to
> them, if
>
> > (a)  the servant
> >
> > > (i)  is upon the premises
> > > in possession of the
> > > master or upon which the

servant is privileged to
enter only as his servant,
or

(ii)  is using a chattel
of the master, and

(b)   the master

(i)  knows or has reason
to know that he has the
ability to control his
servant, and

(ii) knows or should know
of the necessity and
opportunity for exercising
such control.

Restatement (Second) of Torts § 317.[1]  Comment c to that

---

[1] Section 213 of the Restatement (Second) of Agency also
recognizes an employer's duty to properly select employees.
See Dempsey v. Walso Bureau, Inc., 431 Pa. 562, 568, 246 A.2d
418, 421 (1968).  That section reads as follows:  "A person
conducting an activity through servants or other agents is
subject to liability for harm resulting from his conduct if he
is negligent or reckless:  . . . (b) in the employment of
improper persons or instrumentalities in work involving risk
of harm to others; (c) in the supervision of that activity; or
(d) in permitting, or failing to prevent, negligent or other
tortious conduct by persons, whether or not his servants or
agents, upon premises or with instrumentalities under his
control."  The comment under that section states:  "An agent,
although otherwise competent, may be incompetent because of

section provides:

> Retention in employment of servants
> known to misconduct themselves.  There
> may be circumstances in which the only
> effective control which the master can
> exercise over the conduct of his
> servant is to discharge the servant.
> Therefore the master may subject
> himself to liability under the rule
> stated in this Section by retaining in
> his employment servants who, to his
> knowledge, are in the habit of
> misconducting themselves in a manner
> dangerous to others.  This is true
> although he has without success made
> every effort to prevent their
> misconduct by the exercise of his
> authority as master.

Restatement (Second) of Torts § 317 at Comment c.

The Pennsylvania Superior Court addressed a claim of negligent supervision in Coath v. Jones, 277 Pa. Super. 479, 419 A.2d 1249 (1980).  The employee in Coath raped the plaintiff after having gained entry into

---

his reckless or vicious disposition, and, if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity."

her home by representing that he was there at his
employer's direction and on his employer's business.
The plaintiff alleged that the employer knew or should
have known of the perpetrator's propensity for violence
against women and was therefore negligent in hiring and
retaining the perpetrator.  The trial court sustained
the employer's preliminary objections to the complaint
and the Superior Court reversed.  The Court explained
that "the defendant could be found negligent if [the
employee] was known to have the inclination to assault
women or if the defendant should have known that."  Id.
at 483, 419 A.2d at 1250.  The Court relied in part on
Section 302B of the Restatement (Second) of Torts which
provides:

> An act or omission may be negligent if
> the actor realizes or should realize
> that it involves an unreasonable risk
> of harm to another through the conduct
> of a third person which is intended to
> cause harm, even though such conduct is
> criminal.

Restatement (Second) of Torts, § 302B.

The Pennsylvania Supreme Court considered a
negligent hiring claim in the context of clergy sexual
abuse in Hutchison v. Luddy, 560 Pa. 51, 742 A.2d 1052
(1999).  The plaintiff in Hutchison claimed that he was
molested by a priest for a number of years, both in the
priest's rectory bedroom and on at least two occasions
in a motel room.  He brought suit against the priest,
the church to which the priest was assigned, the diocese
and the bishop of the diocese.  He claimed, inter alia,
that the diocese and bishop knew or should have known
that the priest was predisposed to engage in pedophilic
behavior and therefore owed a duty to prevent the priest
from having contact with children.  The jury found in
favor of the plaintiff.  The Superior Court reversed the
jury's verdict, holding that the plaintiff had failed to
establish liability under Section 317.  The Supreme
Court reversed and held that the jury could reasonably
have found liability under that section.  The Supreme
Court was persuaded by the facts that the bishop and
diocese knew that the priest had a propensity for

9

pedophilic behavior and were aware of several specific
instances of such conduct.  They also knew that placing
an abusive priest in a position in which he would have
contact with children would afford him ample opportunity
to commit further acts of abuse.  Accordingly, they had
a duty to take appropriate precautions to prevent the
priest from molesting more children, e.g., by assigning
him to a position in which he would not have any contact
with children, by ensuring that he sought treatment or
by terminating his employment altogether.  The Court
explained:

> Bishop Hogan and the Diocese . . . did
> not attempt to prevent the foreseeable
> harm, and instead undertook a course of
> conduct that increased the risk that
> Luddy would abuse Michael and other
> children.  Instead of keeping him away
> from children altogether, they
> disregarded Luddy's misconduct and
> allowed him to have unsupervised
> contact with children.  Instead of
> responding to Luddy's pedophilic
> behavior, they concealed and ignored
> it.  Bishop Hogan and the Diocese knew
> Luddy's history and were in a position
> to prevent him from repeating it, yet
> for years they willfully allowed him to

10

go on molesting children with impunity.
Their inaction in the face of such a
menace is not only negligent, it is
reckless and abhorrent.  Hence, Bishop
Hogan and the Diocese are as
responsible as Luddy for the harm done
to Michael, or, as the jury found, even
more liable than the molester himself.

Id. at 65, 742 A.2d at 1059.

The central issue on appeal to the Supreme
Court in Hutchison was the privilege element of the
location requirement in Section 317(a)(i).  The Superior
Court had reversed the jury verdict on the grounds that
the motel room, the site of the assaults which were not
time-barred, was not owned or controlled by the church.
The Supreme Court rejected this reasoning and explained
that neither ownership of the premises nor the priest's
purpose in entering the room was dispositive:  "What
Luddy did or intended to do once he was in the motel
room is irrelevant.  Obviously, no one is ever
privileged to enter a room for the purpose of sexually
abusing someone.  The issue is not what [the priest]

11

intended to do once he entered the room, but how he gained access to the room in the first place, i.e., because of his position as a priest or for some other reason." Id. at 67, 742 A.2d at 1060. The jury could properly have found that the priest was privileged to enter the motel room only as a priest and spiritual advisor. The bishop himself testified: "If you're a priest, you're a priest twenty-four hours a day, every day of the year." Id. at 69, 742 A.2d at 1062. Moreover, the jury could have reasonably concluded that it was the defendant's status as a priest that created and perpetuated the relationship that afforded him access to the plaintiff's motel room. Accordingly, the privilege element of Section 317(a)(i) was satisfied and the jury's verdict against the diocese and the bishop under Section 317 was legally sustainable. Id. at 69-70, 742 A.2d at 1062.

A complete lack of supervision may also give rise to employer liability. In a case involving

12

allegations of fraud by a home builder, the Superior

Court held that "the total absence of supervision once

on the job exposes the employer/defendant to

'constructive notice' that [the employee] was engaging

in activity mushrooming into criminal behavior . . ."

Heller v. Patwil Homes, Inc., 713 A.2d 105, 109 (Pa.

Super. 1998).

### IV. Negligence Per Se

At the time that Doe was being abused, there

was in effect in Pennsylvania a law called the Child

Protective Services Act which requires persons,

including members of the clergy, to report suspected

instances of child abuse to appropriate governmental

officials.  That statute reads as follows:

> Persons who, in the course of their
> employment, occupation or practice of
> their profession, come into contact
> with children shall report or cause a
> report to be made in accordance with
> section 6313 (relating to reporting
> procedure) when they have reasonable
> cause to suspect, on the basis of their

13

medical, professional or other training
and experience, that a child coming
before them in their professional or
official capacity is an abused child.

23 Pa. C.S.A. § 6311(a).[2]  The Child Protective Services

Act also requires that persons in charge of an

institution or their designated agents relay reports of

abuse that are communicated to their subordinates.  That

portion of the statute reads as follows:

> Whenever a person is required to report
> under subsection (b) in the capacity as
> a member of the staff of a medical or
> other public or private institution,
> school, facility or agency, that person
> shall immediately notify the person in
> charge of the institution, school,
> facility or agency or the designated
> agent of the person in charge.  Upon
> notification, the person in charge or
> the designated agent, if any, shall
> assume the responsibility and have the
> legal obligation to report or cause a
> report to be made in accordance with
> the section 6313. . . .

23 Pa. C.S.A. § 6311(c).  The reports are to be made to

---

[2]  The act was amended as of May 29, 2007.  The language cited
above was included in the statute that was in effect on the dates
that Doe was harmed.

14

the Department of Public Welfare or to the appropriate
county agency pursuant to the procedure set forth in 23
Pa. C.S.A. § 6313.  Prior to May 29, 2007, a person or
official who willfully failed to report a case of
suspected child abuse commits a summary offense for the
first violation and a misdemeanor of the third degree
for a second or subsequent violation.  23 Pa. C.S.A. §
6319.

Persons required to make a report to government
officials under the Child Protective Services Act
include "any member of the clergy."  23 Pa. C.S.A. §
6311(b).  It has already been decided that the
individual Defendants, including Defendants Bishop James
C. Timlin and Rev. Joseph R. Kopacz, qualify as "members
of the clergy" who are required to report under the
statute and that all of the Defendants were in
sufficient contact with Doe to bring them within the
reporting requirements of the statute.  See Doe v.
Liberatore, 478 F. Supp.2d 742, 764 (M.D. Pa. 2007).

15

Violation of a statute like the Child
Protective Services Act results in negligence per se
where the statute creates a duty that has been breached
and such negligence is the proximate cause of the injury
complained of.  See J.E.J. v. Tri-County Big
Brothers/Big Sisters, Inc., 692 A.2d 582, 585 (Pa.
Super. 1997).  The Pennsylvania Superior Court explained
the concept of negligence per se as follows:

> The concept of negligence per se
> establishes both duty and the required
> breach of duty where an individual
> violates an applicable statute,
> ordinance or regulation designed to
> prevent a public harm.  A plaintiff,
> however, having proven negligence per
> se, cannot recover unless it can be
> proven that such negligence was the
> proximate cause of the injury.
> Moreover, in analyzing a claim based on
> negligence per se, the purpose of the
> statute must be to protect the interest
> of a group of individuals, as opposed
> to the general public, and the statute
> must clearly apply to the conduct of
> the defendant.

Id. A.2d at 585.

16

The Child Protective Services Act dictates the duty of care required of someone in the same situation as the Defendants in this case.  Their sloughing off of responsibility for reporting concerns regarding Doe is precisely the harm that the statute was intended to prevent.  The inaction by the Diocese of Scranton, Sacred Heart of Jesus Church, Bishop Timlin and Fr. Kopacz constitutes a clear violation of the obligation imposed by 23 Pa. C.S.A. § 6311 and is sufficient to support a finding of negligence per se.  See, e.g., Jordan v. Philadelphia, 66 F. Supp.2d 638, 644 (E.D. Pa. 1999) (violation of statute gives rise to negligence per se where statute creates duty that was breached and negligence is proximate cause of injury).

## V.  Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must show that the defendant, by extreme and outrageous conduct,

17

intentionally or recklessly caused him to suffer severe
emotional distress and resulting bodily harm.  <u>Johnson</u>
<u>v. Caparelli</u>, 425 Pa. Super. 404, 412, 625 A.2d 668,
671-72 (1993), <u>appeal</u> <u>denied</u>, 538 Pa. 635, 647 A.2d 511
(1994).  The conduct must be outrageous in character and
so extreme in degree as to go beyond all possible bounds
of decency and be regarded as atrocious and utterly
intolerable in a civilized community.  <u>Id.</u>  Sexual abuse
of a minor by a priest is, of course, sufficiently
extreme and outrageous to permit recovery by the minor
under a theory of intentional infliction of emotional
distress.  <u>Id.</u> at 412, 652 A.2d at 672.

## VI. Breach of Fiduciary Duty

Section 874 of the Restatement (Second) of
Torts provides that "[a] person standing in a fiduciary
relation with another is subject to liability to the
other for harm resulting from a breach of the duty
imposed by the relationship."  Restatement (Second) of
Torts § 874.  Comment (a) to that section states:  "A

18

fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Restatement (Second) of Torts at Comment a. The Pennsylvania Supreme Court has held that a fiduciary or confidential relationship exists "whenever one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on the one side, or weakness, dependence or justifiable trust, on the other." In re Estate of Clark, 467 Pa. 628, 635, 359 A.2d 777, 781 (1976) (citations omitted). Pennsylvania recognizes a fiduciary duty claim where a minor child is entrusted to the care of a member of the clergy to participate in church activities and the minor child is sexually molested during the entrustment. See, e.g., Doe, 478 F. Supp.2d at 772-73.

19

## VII.    Punitive Damages

The Pennsylvania Supreme Court recently reaffirmed the standard for imposition of punitive damages as follows:

> "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Feld v. Merriam, 506 Pa. 383, 485 A.2d 742, 747 (1984) (quoting Restatement (Second) of Torts § 908(2) (1979); see also Chambers v. Montgomery, 411 Pa. 339, 192 A.2d 355, 358 (1963). As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct. See SHV Coal, Inc. v. Continental Grain Co., 526 Pa. 489, 587 A.2d 701, 704 (1991); Feld, 485 A.2d at 747-48; Chambers, 192 A.2d at 358. See also Restatement (Second) of Torts § 908, comment b. The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct. Kirkbride v. Lisbon Contractors, Inc., 521 Pa. 97, 555 A.2d 800, 803 (1989); Restatement (Second) of Torts § 908(1) ("Punitive damages are damages, other than compensatory or nominal damages, awarded against a

20

> person to punish him for his outrageous
> conduct and to deter him and others
> like him from similar conduct in the
> future.")  Additionally, this Court has
> stressed that, when assessing the
> propriety of the imposition of punitive
> damages, "the state of mind of the
> actor is vital.  The act or failure to
> act, must be intentional, reckless or
> malicious."  See Feld, 485 A.2d at 748;
> see also Martin v. Johns-Mansville
> Corp., 508 Pa. 154, 494 A.2d 1088, 1097
> n.12 (1985) (plurality opinion).

Hutchison v. Luddy, 582 Pa. 114, 121-22, 870 A.2d 766,

770-71 (2005).  The Hutchison Court went on to describe

the distinction between persons who know or have reason

to know of facts which create a high degree of risk of

physical harm to another and act with deliberate

indifference to that risk and persons who know or have

reason to know of facts which create a risk but do not

realize or appreciate the high degree of risk involved

although a reasonable person in his position would do

so.  Id. at 122-23, 870 A.2d at 771.  Only the first

type of reckless conduct is sufficient to create a jury

question on the issue of punitive damages.  The

Hutchison Court explained:

> [I]n Pennsylvania, a punitive damages
> claim must be supported by evidence
> sufficient to establish that (1) a
> defendant had a subjective appreciation
> of the risk of harm to which the
> plaintiff was exposed and that (2) he
> acted, or failed to act, as the case
> may be, in conscious disregard of that
> risk.

Id. at 124, 870 A.2d at 772.

In that case, the Supreme Court reversed the decision of the Superior Court which held that punitive damages are never available for claims of negligent supervision based on Section 317.  The Supreme Court explained that there is nothing in law or logic to prevent a plaintiff in a case sounding in negligence from undertaking the additional burden of attempting to prove that the defendant's conduct was also outrageous and therefore warrants an award of punitive damages:

> The fact that a cause of action
> bottomed on negligence does not require
> proof of the heightened showing of

22

> culpability necessary to sustain
> punitive damages in order to secure the
> underlying compensatory damages does
> not mean that punitive damages --- as
> an element of damages --- should be
> deemed automatically unavailable, even
> if the conduct of the defendant(s) went
> well beyond negligence and into the
> realm of the outrageous.  The penal and
> deterrent purpose served by an award of
> punitive damages is furthered when the
> outrageous conduct occurs in a case
> sounding in negligence no less than
> when an intentional tort is at issue.

Id. at 124, 870 A.2d at 772.  Thus, "there is no general

proscription in law against pursuing punitive damages in

the Section 317 context, where the facts so warrant" and

punitive damages may properly be awarded in connection

with a claim of negligent supervision.   Id. at 126, 870
A.2d at 773.

                                   Respectfully submitted,

                                   /s/ Daniel T. Brier
                                   Daniel T. Brier
                                   Donna A. Walsh

                                   Attorneys for Plaintiff,
                                   John Doe

MYERS, BRIER & KELLY, L.L.P.
Suite 200, 425 Spruce Street
Scranton, PA  18503
(570) 342-6100

Date: November 5, 2007

## CERTIFICATE OF SERVICE

I, DANIEL T. BRIER, hereby certify that a true and correct copy of the foregoing Trial Memorandum was served upon the following counsel of record by electronic mail on this 5th day of November, 2007:

> Joseph A. O'Brien, Esquire
> 1212 S. Abington Road
> P.O. Box 240
> Clarks Summit, PA 18411
>
> James E. O'Brien, Esquire
> Scranton Life Building
> 538 Spruce Street
> Scranton, PA 18503
>
> Lawrence J. Moran, Esquire
> 1006 Pittston Avenue
> Scranton, PA   18505
>
> Christopher J. Osborne, Esquire
> 527 Linden Street
> Scranton, PA   18503

/s/ Daniel T. Brier